case number 20-3061 United States of America versus Melvin Lawrence appellants. Mr. Welch for the appellant, Mr. Goodhand for the appellate. Good morning. Councilor Appellant, you may proceed. Good morning. May it please the court. My name is William Welch and today I would like to speak with you about allocution. Congress has authorized a resentencing remedy to correct the racially disparate sentencing scheme that's based on crack compared to powder cocaine offenses. And last year, this course, this court said that when considering motions for such relief, giving full and fair hearings is important to ensure that the goals of the statute are met and that a range of federal rule of criminal procedure 32 says before imposing sentence, the court must address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence. Historically, people believe that defendants have the opportunity to allocute at sentencing. Although it's not a fundamental right, the right of allocution is grounded in the common law. What about villain? Yeah, I'm sorry. Did someone have a question? What about the Supreme Court's decision in Dylan? Dylan was not a first act. First step back. Kate's Judge Wilkins. I understand why, you know, that's relevant because, of course, the district court relied on Dylan in this case, but it also relied on the district court's opinion in white, which came out before the D. C. Circuit's opinion in white. What about Rule 43 before? I'm sorry. I didn't hear that judgment. What about Rule 40 Federal Rule of Criminal Procedure 43 before, which says that presence is not required for the 35 82 C. Well, except this is not squarely a 35 82 C case. What do you mean by not squarely a 35 82 C case? Are you are you proceed? It's 35 82 C. The source of the exception to finality. In this case, I would not go that far. I don't want to ignore a federal rule of criminal procedure. I realized that the court needs to consider the whole scheme of things. But this seems different because the First Step Act is a remedial statute. No, I just want to stop. I just would like an answer to the question of whether this is a reduction of sentence under 18 U. S. C. 35 82 C. And that's the basis on which 404 is brought in. I don't believe it is. I don't believe that Congress relied on that. No. So you don't think you're not proceeding at all under 18 U. S. C. 35 82 C. I would not say so. Your honor would not say so. That's that's a long way of saying no. Right. You have nothing to do with 35 82 C. It's not. This argument doesn't. I certainly understand why. Because that involves sentencing reductions. And certainly Congress is telling the district court to consider a it would seem that 35 82 C would have to do with changes in the guidelines. Uh, you know, perhaps more of a clerical type mistake. Whereas this is basically saying to the district court, go back and consider whether this sentence was the entire sentence. Consider the 35 53 a factors and ask the district court. Do you still come out to the same sentence? Because, of course, it isn't. It isn't a mandated reduction, either. I mean, in this case, it ended up seeming like that because the actual statutory maximum changed so they had to. The district court had to reduce the sentence, but ultimately ended up imposing the maximum, which it hadn't previously. I would like to reserve the balance of my time and rebuttal. But if the court I hope I answered your question, Judge Millett. And if the court has any other questions for me, I'd like to reserve the balance of my time. You think a sentence modification? Um, sentence reduction. It is a modification off the sentence. It is. There was a de facto reduction in in the sentence, an absolute reduction. I'm asking what was sought in this case. It was a reduction of sound. Well, yes, that is what Mr Lawrence. It wasn't an entirely new sentencing where he would be subject to increases or decreases or anything like that. Could not be subject to an increase at this. It was only a reduction. But you don't think that's a reduction of sentence within the median rule 43 before. I understand why it might be why it might see. I'm really just asking your legal theory here. Oh, yes. Legal theory here from Mr Lawrence point of view is that we should have had. This was a resentencing. This is almost like the sentencing was vacated, and you send it back for a new sentencing. We think that would be a more appropriate approach to this than simply saying, Okay, there was some clerical error. There was a guideline change. You gotta go back and just recalculate some aspect of the sentence. This is Congress saying, Take a fresh look at the whole sentence and redo it. Just one other question. Sorry. Um, you argue for allocution on this case, but I didn't ever see you say what it is that Mr Lawrence would have said an allocation that wasn't either said in your brief, um, or already said it is prior allocation. Well, he never had the opportunity, and that's that's just no transcript. Normally, one has to show prejudice, and so that's what I was, um, confused about. What is what are what have you done to show what he had to give an elocution that he was prejudiced by the absence of allocution? Well, he's prejudiced because basically the government has been able to point to, um, his history in the B. O. P. Um, since the earlier sentencing, and he's been denied the opportunity to respond to that. And why couldn't you have explained it in your brief? Why? Why? Why wouldn't I mean, the government didn't allocute when it made those arguments. It didn't in a brief. So I'm just wondering where the if he had an answer or response to that. Why wasn't it in the brief? Well, that's a fair question. I would just say that the best person to speak to his progress and what he's dealt with in the Bureau of Prisons is Mr Lawrence himself in allocution. Have you talked to him about? I don't mean to intrude a privilege here, but I'm just sure as to, um, how can I have comfort in knowing that there's something to be said since there was nothing included in the brief? Well, fair point. I will just say that my client is one of the more challenging folks I've ever had to speak with, and kind of trying to virtually get him focused is a real challenge because I haven't been able to go see him either and have a real conversation and explain to him. Listen, this is what you say. Doing so on a telephone is not the same. So I realize that isn't a direct answer to your question, but that is the history of this appeal. Thank you. All right, let us hear her counsel for the government. Thank you, Your Honors. May it please the court. David Good hand for the United States. Uh, eight Circuit Court of Appeals have concluded that a hearing with the defendant's presence is not necessary in this context. Um, that is an understandable conclusion, given the statutory text of the First Step Act, which, um, establishes a Congress officer authorized only a limited adjustment to an otherwise final sentence. If you first look at the, uh, the statutory text establishes that simply emotion to reduce, um, impose a reduced sentence, not impose a sentence or impose resentencing. Um, second, of course, as the courts have made clear, there is the as if clause, which permits a district court to alter a single variable, go back in time and sections two and three of the Fair Sentencing Act. And the court, the district court probably did that here, went back, considered the changed career offender guideline, which was hinged on the statutory maximum and minimum and altered base offense level. Accordingly, the district court. Also, I would suggest very presciently anticipated this court's decision in white considered the defendant's post sentencing conduct. Also considered this 35 53 factors. Um, and carefully adjudged. Finally, I would suggest the defendant's arguments. He made several arguments in mitigation relating to his age and purported minimal risk of recidivism. He also made an argument relating to his medical condition and finally suggested that his criminal history suggested that he was appropriate. Uh, he was appropriately considered for reduction. The district court carefully considered all those factors and concluded that a reduction of 10 months to the statutory maximum was appropriate, but no more. So, uh, could I just ask you quickly? Um, although it's not argued here by counsel in his brief, both in the opening brief and reply brief, he suggests that, uh, under this statute, the district court was required to say something about, uh, the sentencing disparity and that here the district court made no reference to that. Uh, what is your response? I rewrite to the proposition that a sentence pursuant to the first step back to reduction should be procedurally reasonable. Um, procedural reasonableness in this context does not require a sort of ticking off of all the 35 53 factors. That is, um, every one of them in course, including disparity, of course, being a 35 53 factor. Um, so in this respect, the district court, in her factors, um, that's an appropriate, um, procedurally reasonable articulation of an adequate sentencing rationale, I would suggest. Um, and number one, the response in part that I just want to be clear about this. You do think that, or are you in agreement with the argument being made by appellant that, um, there was a requirement given this statute to look at disparity? Or is the statute itself the only consideration of disparity that was necessary? In other words, Congress has already considered the disparity and allowed this mechanism to address it. And there was no further requirement. I need to be arguing that there is. Well, I think disparity comes in play here in two places. One Congress has already considered it in making the fair Sentencing Act amendments retroactive. So that disparity is already considered by Congress in giving district courts the discretionary authority to reduce. But also, as I understand it, white from this court has suggested that 35 53 factors are should be considered by a district court. And I think, of course, 35 53 has a reference to disparity. So I think it's it's considered in both places here. We know that the court considered the overarching goal of Congress. Um, as the defendant concedes, even in his reply brief, the district court made mention of the core purpose of the fair First Step Act, which was to account for disparity. So I don't think there's any doubt that both via her consideration of the 35 53 factors and her understanding of Congress's goal with respect to the First Step Act, this court considered disparity. Can I ask a question? Um, that's puzzled me. So when Mr Lawrence was sentenced to 250 months, that was a below guidelines range was 262 to 327 months. And after his guidelines were recalculated by the district court here, the district court found that the guidelines range, um, pursuant to the had served um, 209 months just under the guidelines, and he asked for time served. So instead of the government opposes that so instead of him getting another sentence that's below guidelines, he gets a sentence that's basically at the high end of, um, of the guidelines, or I guess you could say more fair to say middle of the guidelines because the guidelines range for now is is is is 210 to 267. But the statutory maximum was 20 years or the 240 months. So how does how how does this seem? How do we square the fact that that he got a below guidelines sentence before and he goes in for a reduction and he gets a within guidelines sentence and how is that compatible with how this is supposed to work? I mean, the whole purpose of this is to deal with this crack powder disparity, but but one way of looking at it is that he got no benefit at all. He went from getting a below guidelines sentence before to getting a within guidelines sentence. The the is true at the 2009 resentencing the district court very downward from the guidelines. And in fact, in part, the district court very downward in consideration of the defendant's counsel's argument about the disparity, though, recognizing that the current statute that was being contemplated that time didn't necessarily alter his career offender guidelines. The district court in 2009, nonetheless, did come down in a variance from the guidelines recommendation, but the district court in 2009 also considered the defendant's criminal history, his lack of remorse, and the seriousness of offense to conclude that that variance was an appropriate sentence. I would suggest the district court here in 2020 looked at that number and concluded that it was it was appropriate still to the extent that the the statutory max the career offender baseline was accounted for via the court looked again at the criminal the court for the record. I would note that the judge Kolar Catelli pulled the resentencing transcript looked at that resentencing transcript looked at the PSR again, but ultimately concluded in light of the defendant's disciplinary record in in prison the post sentencing conduct at White says is appropriate for this court to consider a district court to consider the court concluded that the number to excuse me 240 was an appropriate number and in particular she highlighted the danger to the community that she thought the defendant represented. So I don't think there's necessarily a requirement of exact proportionality and I think Chavez Mesa speaks to that in the 3582 context C2 context. They actually declared proportionality is not necessarily required instead. It's again a question of substantive reasonableness of the sentence that results in here that is there a requirement to say well there was a variance downward before but I'm not going to vary downward this time and did the district court acknowledge that it was essentially you kind of changing the construct from the first sentencing. I don't I'm sorry to interrupt. I don't think there has to be an express articulation again. We have to look at the the totality Rita says every case is different every sort of sentencing explanation will be different. I don't think there's any doubt there the thoroughness of this district court opinion demonstrates she full well understood with the district court did in 2009 the fact that she didn't say well, I recognize it was a variance then not doing that variance here given the reasoning. I think that supports the conclusion that she understood that a variance here was not appropriate. White says no less than three times that a hearing well at first says it is important that they meaning defendants being resentenced under the First Step Act be given full and fair hearings on their claims to ensure that the goals of the act are met and then it says again later in the opinion it notes that nor did the court hold a hearing on appellants motions for relief that's again at page Penn site 92 and then for full measure a third time at let's see I guess it's also at Penn site 92 it says and the court did not hold a hearing on appellants motion for relief. So how are we to interpret what the court meant when it said and it is therefore important that they be given full and fair hearings on their claims. I think white tells us what that means.  I think what the court was not aware of   it was not aware that the courts analysis of the sentencing first the district court did not indicate that it had considered the voluminous mitigating evidence provided by the defendant in support of his First Step Act motion. Number one and number two white identified a second failing omission on the district court's part in the white side to a court's discretionary decision in the context of a First Step Act motion and what critically I think what white did is indicate that if the court had had a hearing we might have had an indication on appeal for the court to review whether or not the court the district court had indeed considered those but the court additionally noted there also wasn't any reference in the opinion to either the mitigating evidence or the consideration of the relevant factors of 3553 factors. Well, why didn't the court just say it's not in the opinion. So we don't know whether the court considered it the district court considered it. I mean, you don't have to then go on for three separate occasions and say there was no hearing. Well, I think a fair reading of white is that a court a district court could have adequately accounted for this as this district court did by writing an opinion indicating the court had considered the mitigating evidence indicating that the court had considered the 3553 factors, but I read right white to stand for the proposition that we had a blank void in the record. There was no hearing no transcript to consult nor was there an opinion that made reference to these critical features of the First Step Act discretionary sentencing. So I and again, you know, particularly I look at page 92 of the white opinion district court's opinion fails to mention any of this evidence nor did the court hold a hearing on appellants motions for relief. I read that the government reads out as suggesting that that was you could have covered your bases either way, but we don't have that here. We must remand. What's wrong with the reading of white to say following following white in this case. If you are going to change from varying downward to within guideline sentence and on top of that base it upon the defendants conduct in prison. Then you ought to have a hearing so that you can give the defendant an opportunity to explain his post sentencing conduct. That certainly would have just would have been permissible for the court to do that. But there's nothing that requires it. Number one and number two, all of that could have been hashed out via the papers that the government in its response to the First Step Act motion did detail in some in some fashion the disciplinary record. It was going to ask the court to consider it would have been a very easy matter for the defendant to reply to that. He did not the court relied on it quite properly. And I think given White's instruction that sentences in the First Step Act context must still be procedurally reasonable. I think we have here a procedurally reasonable decision with an adequate explanation.  under a plain error standard of review that Congress passes a statute recognizing a disparity that it thinks was inappropriate and therefore authorizes the district court to look at this sentence again in light of the First Step Act. And if your argument is presented as I understand it, it's okay for the district court to treat this as a resentencing as distinct from a correction. But it is not all right for the defendant to treat it as a resentencing in which the usual procedural requirements apply. And that's what I just want to be clear about. So do defendants who file these motions know that they can end up worse off? I think certainly they must understand given for example, this court's decision in White post sentencing conduct can be considered. And of course we have to step back and look at this at the higher level here, which is this is all discretionary. The First Step Act doesn't require a district court to do anything. Once you account for the amendments to sections two and three. No, I think you're clear about that. But once the district court decides to do something, the question is what is the First Step Act authorizing? This is not as though the government had filed a motion saying, look at his post incarceration conduct. To reconsider the sentence. That's all I'm trying to understand. Sure. I think all of this comes into play based on a mandatory consideration of the 3553 factors. So once you do the front-end analysis, you do, you account for the section two and three amendments and you come up with any changes to the guidelines, you consider the new statutory mandatory minimums and maximums. Then we are now into, I would suggest, 3553 factors and that's a discretionary feature that is certainly familiar to defendants in this context. They went through it when they got initially sentenced. So that's... You understand what I'm getting at, don't you? The defendant thinks he's going in for a reduction. The district court is not obligated to give it to him. But does he also know that the district court can impose a greater sentence than his original sentence as imposed by Judge Penn? I thought that was the thrust of Judge Wilkins' question. He did get a reduction here. He got the 10-month reduction. I think I understood Judge Wilkins to be asking whether or not the district court had to expressly articulate the reasoning why a downward variance from the guidelines was not again appropriate. And I don't think procedural reasonableness requires that when we have the thoroughness of the district court opinion here. But he certainly did get a reduction. And I think the question is, when you're assessing the scope of that reduction, does a defendant understand that the consideration of the 3553 factors might include post-sentencing conduct? Absolutely. Anything further? Yeah, if you're done. I just wanted to follow up on Judge Wilkins' line of questioning. It's not only was his position vis-a-vis the guidelines changed, but before he had been below the statutory maximum. Now he is at the statutory maximum. And White said that district courts here have to give a sufficiently compelling justification for the sentence they impose. How can an explanation be sufficiently compelling under White's terms if it doesn't even acknowledge the change in position that's being affected vis-a-vis the statutory maximum and the guidelines range? Shouldn't the district court, didn't the district court have to at least acknowledge that before he was below statutory max, now he's at it. Before he was below guidelines, now he's in the middle of it. Here's why. Well, I think the court did acknowledge that to the extent that the court carefully went through what happened in 2009. Acknowledge this. Can you point me to where the district court acknowledged that while you were below, previously were below, now you're going to the middle. Previously, you were below the statutory maximum. Now you're at it. And here's why. It was, no, I do not mean to suggest it was that express. Absolutely not. The court did not do that. Are you implying it? The language implies it? Acknowledgement of those two changes. In the procedural history, the court recognizes, the court recognizes that, let's see, we're at page... The appendix 102-103 is the court reviewing the 2009 resentencing and acknowledging that the court gave the variance. That's it, page 103. The court imposed a sentence of 250 months incarceration. And then we have the... Go ahead, keep going. I'm sorry. I apologize. Go ahead. And then we have the court recognizing that the statutory maximum is now 20 years, 240 months. So we have the court recognizing that. We have the court recognizing that his prior sentence was below the statutory maximum. Well, I think that's in the, if it's not expressed, it's certainly incorporated into the probation offices. It's ECF 132, which goes through this in detail. No, but what White requires is sufficiently compelling justification by the district court. And I'm not sure the probation offices report or an acknowledgement of a past fact in the procedural section of the opinion without explanation later for the specific determinations counts as sufficient compelling justification. Well, again, I think that the sufficiently compelling justification does not have to be expressly articulated to the extent that the court. Well, I'm asking, like, sort of, you know, in administrative law, if an agency is changing what it did in the past, we require them to acknowledge that they're doing that and then give, and then they explain it. And that's just for reasonableness review, not sufficiently compelling explanation requirement. And so I'm just trying to understand how we couldn't require that a district court in its analysis of relevant factors, acknowledge that where you are with respect to the guidelines and where you are with respect to the statutory maximum, you're coming out worse. Yes, you've got 10 months less on your sentence. The law required that. That wasn't a discretionary judgment. That was absolutely legally obligated because the statutory maximum changed. So where is that? Where is that? Why isn't that something that we should require of district courts in their making their discretionary judgment? I don't think that follows from Rita and or Chavez-Meza. Rita said- What about White? I'm quoting White here on sufficiently compelling justification. Sure. And I think White, the sufficiently compelling justification here is the lengthy disciplinary record coupled with the criminal history of the defendant, coupled with his risk of recidivism that was identified by both the BOP and the government. That is a sufficiently compelling justification. I have no idea. At his initial sentencing when the probation office does the PSR, is there a risk of recidivism noted there? I don't know the answer. I guess I doubt it. But again- It's not something that's thought about the initial sentencing as part of protecting the public. Right. Yeah. So all we have is what the district court said at JA-103 where she says that the district court, Judge Penn, had afforded defendant, quote, somewhat of a variance, although not as substantial as counsel had requested. And then we get to 113 and 114 where she's reviewing his post-incarceration conduct. Yes, and in the context of the thorough review she's done, of course, of the probation office's addendum which identified the statutory maxes and the new base offense level. I would finish by suggesting this is not something I understand the defendant has even raised. I may be- Note, I started my question with plain error. I think that's an appropriate consideration here. I certainly could have gone through this chapter and verse in my brief if I had understood that the defendant was raising anything other than that he didn't get a hearing. But I do think even in the context of not plain error, I think what we have here is a thorough district court opinion that considers all the relevant procedural history and understands the facts as presented. Certainly, this doesn't rise to the level of plain error in the context of procedural reasonableness. If there- Any further questions? Thank you. Thank you, Your Honors. We would ask that you affirm the judgment below. All right, counsel for appellant. We'll give you a minute or two. Thank you, Judge Rogers. Ultimately, this is about disparity. That's what Congress said. That is why Congress authorized these resentencings and despite what the government- Did you make a disparity argument in your opening brief? I saw something in your reply brief briefly alluding to the problem. No, I did not in the opening brief. It was in response because- Okay, that's not allowed. It is something that the district court didn't address. I'm correcting the government's comment. They said- Well, the district court didn't address it and you think it's what this case is all about. It should have been in your opening brief. Fair comment, Your Honor. Fair comment. Counsel, don't give up too much. What about what you said on page 12? Well, I mean, that is ultimately the issue is that, you know, this is all about disparity and disparity is the one thing that is not addressed in the record. Sorry, what on page 12? I'm sorry? On page 12 of your opening brief, you say, I'm quoting, assessing section 404 motions must take account of disproportionate and racially disparate sentencing penalties. End of quote. And you're citing White, the White opinion from this court. And that is ultimately what this is all about. And that is not what- The remedy that you argued for, if we turn the page, the remedy that what you say we're supposed to do to address Congress's intent here is have hearings with elocution. That is what Mr. Lawrence wants, ultimately, and that is what we believe White calls for when it says full and fair hearing. We're having a hearing right now. There was no hearing in the district court. That's why there's no transcript. Does a full and fair hearing have to include the defendant's presence to elocute? Or are you arguing for the attorneys coming into court literally or virtually and having an argument before the judge? We're saying that at least like a regular sentencing hearing has to have the judge offering the defendant the opportunity to elocute. He doesn't have to take it, but the Federal Rule of Criminal Procedure 32 would apply to these and at least the opportunity. And given the fact that we do so much virtually now, it wouldn't be that difficult. We would not have to have the marshals bring him back to DC in the middle of a pandemic. If we adopt your rule, it would apply going forward and at least we're all hopeful we're not going to be doing virtual hearing. Right. But it could be longer. So really this is a rule that would require prisoners to be transported and sometimes district prisoners that could be halfway across the country here to elocute on a sentence reduction where they cannot have an increase in their sentence. Correct. And I would also say I don't understand counsel. I mean the Bureau of Prisons does these remote sentencing all the time agenda Wilkins knows better than I so I mean let's just be clear what your argument is and I thought what Judge Millett was getting at was courts recognize that you can have quote evidentiary hearings on issues without the presence of a defendant. Physically. Yes, and and I what I was thinking without saying it when when her honor asked was, you know, how long will the CARES Act continue? I mean that is an option that presently we would have to say fine. We'll consent to a virtual hearing that way. He can have his say and he doesn't have to come all the way across the country. Any further questions? No. Thank you. We'll take the case under advisement.
judges: Rogers, Millett, Wilkins